**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

CLIFFORD COLLINS,                                    CASE NO. CV F 05-0614 AWI LJO

               Plaintiff,                     **FINDINGS AND RECOMMENDATIONS ON SOCIAL SECURITY COMPLAINT**
                                                      (Docs. 18, 19.)
      vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

             Defendant.
_____/

**INTRODUCTION**

Plaintiff Clifford Collins ("plaintiff") seeks this Court's review of an administrative law judge's ("ALJ's") decision that plaintiff is neither disabled nor entitled to disability insurance benefits and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433 and 1381-1382c. Based on review of the Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), this Court RECOMMENDS to DENY plaintiff's request to reverse the Commissioner's decision to deny plaintiff disability insurance benefits and SSI or to remand for further proceedings.

**BACKGROUND**

**Plaintiff's Personal Background**

Plaintiff is age 47 with a high school equivalent education and past work as a taxi driver, security

1

1   guard, laborer and cashier.  (AR 16, 67, 75, 79, 84, 104, 187, 188.)

2   **Administrative Proceedings**

3        On August 27, 2002, plaintiff protectively filed his disability insurance benefits and SSI

4   applications to claim disability since June 1, 2001 due to leg and back problems, hypertension and

5   diabetes.  (AR 16, 67, 74, 174.)  With its February 7, 2003 Notice of Disapproved Claims, the Social

6   Security Administration ("SSA") denied plaintiff's claims and determined that plaintiff's condition is

7   not severe enough to prevent him to work.  (AR 52.)  On February 14, 2003, plaintiff filed his Request

8   for Reconsideration to claim that he is disabled.  (AR 56.)  With its March 28, 2003 Notice of

9   Reconsideration, SSA again denied plaintiff's claim and determined that plaintiff's condition is not

10  severe enough to prevent him to work.  (AR 57.)

11       On April 21, 2003, counsel was appointed for plaintiff.  (AR 34.) On May 1, 2003, plaintiff filed

12  his Request for Hearing by Administrative Law Judge to claim that he is "totally disabled."  (AR 61.)

13  After a December 22, 2003 ALJ hearing, the ALJ issued his April 23, 2004 decision to conclude that

14  plaintiff is able to adjust successfully to work that exists in significant numbers in the national economy.

15  (AR 19.)

16       Plaintiff submitted to SSA's Appeals Council his April 28, 2004 Request for Review of Hearing

17  Decision to seek review of the ALJ's April 23, 2004 decision.  (AR 11.)  On February 28, 2005, the

18  Appeals Council denied plaintiff's request for review to render the ALJ's decision subject to this Court's

19  review.  (AR 5.)

20  **Medical History And Records Review**

21  ***Sequoia Health Clinic And Norma Solis, M.D., Treating Physician***

22       Plaintiff treated with Norma Solis, M.D. ("Dr. Solis") and others at Sequoia Health Clinic.

23  During 2001, plaintiff was assessed with chronic lower back pain, hypertension, and

24  hyperlipidemia/hyperglycemia. (AR 122-125, 128-130, 172.) Plaintiff was counseled on an appropriate

25  diet to include low fat foods.  (AR 126-127.)  On April 30, 2001, Dr. Solis noted that plaintiff had a

26  neurosurgery appointment but "messed up" and was never seen.  (AR 172.)  September 19, 2001 notes

27  reflect that plaintiff had lost 50 pounds since April 2001.  (AR 126.)  October 31, 2001 notes reflect that

28  plaintiff's hypertension was stable.  (AR 124.)

1    During 2002, Dr. Solis continued to assess plaintiff with chronic low back pain, hypertension

2    and hyperlipidemia/hyperglycemia. (AR 113-116, 118, 121.) On February 5, 2002, Dr. Solis noted that

3    plaintiff's hypertension was under fair control and that his hyperlipidemia was stable.  (AR 121.)

4    Starting on March 18, 2002, Dr. Solis also assessed plaintiff with diabetes mellitus.  (AR 118, 120.)

5    Plaintiff received dietary counseling for his diabetes. (AR 115, 117, 119.) Dr. Solis' fall 2002 notes

6    reflect that plaintiff's diabetes was "diet controlled." (AR 113, 114.)

7    During 2003, plaintiff continued to receive dietary and diabetes counseling. (AR 162, 165.) Dr.

8    Solis continued to assess plaintiff with chronic low back pain, diabetes mellitus, hypertension and

9    hyperlipidemia/hyperglycemia.  (AR 157, 158, 161-164.)  On June 4, 2003, Dr. Solis noted that

10   plaintiff's back pain was "somewhat better" and that plaintiff "tries to stay active." (AR 162.) Dr. Solis

11   found plaintiff's back pain stable and ordered a TENS unit. (AR 159.) On July 8, 2003 and November

12   26, 2003, Dr. Solis found plaintiff's diabetes mellitus, hypertension and hyperlipidemia stable. (AR 157,

13   161.)

14   Dr. Solis completed a January 7, 2004 Complete Medical Report (Physical) to note her treatment

15   of plaintiff's chronic low back pain associated with poor posture and body mechanics. (AR 152.) Dr.

16   Solis noted her clinical findings of morbid obesity, decreased range of motion due to size and pain and

17   lumbar spine pain. (AR 152.)  Dr. Solis noted laboratory findings of right knee arthritis and diabetic

18   peripheral neuropathy. (AR 152.) Dr. Solis diagnosed chronic lumbosacral pain, morbid obesity, and

19   right knee degenerative joint disease and arthritis. (AR 152.) Dr. Solis noted her treatment of anti-

20   inflammatory medications, pain management, dietician consultation, and specialty referral. (AR 152.)

21   Dr. Solis assessed as poor plaintiff's response to treatment and prognosis. (AR 152.)  Dr. Solis

22   concluded that plaintiff is able to: (1) lift up to 20 pounds frequently and up to 50 pounds occasionally;

23   (2) carry up to 10 pounds frequently and up to 20 pounds occasionally; (3) sit, stand/walk and lie/elevate

24   up to two hours in an eight-hour workday and up to one hour without interruption; (4) continuously use

25   his hands for grasping and manipulation; (5) occasionally use his feet, balance, stoop, reach and

26   push/pull.  (AR 153-155.)  Dr. Solis restricted plaintiff to climb, crouch, kneel and crawl due to

27   plaintiff's right knee problems, morbid obesity and pain.  (AR 155.)

28   On January 8, 2004, Dr. Solis assessed plaintiff with chronic lower back pain for which she

3

1   treated with medication.  (AR 151.)

2          With his January 21, 2004 letter, the ALJ noted he was unable to "give much weight" to Dr.

3   Solis' January 7, 2002 Complete Medical Report (Physical) and requested Dr. Solis to provide bases for

4   conclusions regarding limitations, specific limitations, onset and duration of restrictions, information

5   on plaintiff's visits, and whether Dr. Solis' "opinions regarding functional capacity are based on

6   subjective limitations" stated by plaintiff. (AR 106.) Dr. Solis responded with her March 23, 2004 letter

7   to acknowledge her receipt "for information and assessment" as to plaintiff and to state "I am unable to

8   forward the information you have requested as I feel that this assessment is beyond my level of

9   expertise."  (AR 66.)

10                         ***Perminder Bhatia, M.D., Treating Neurologist***

11          On September 9, 2002, board-certified neurologist Perminder Bhatia, M.D. ("Dr. Bhatia"),

12   examined plaintiff on referral due to plaintiff's back and leg pain.  (AR 108.)  Plaintiff complained of

13   back pain, which plaintiff described as continuous, right knee pain to cause his knee to give way and

14   plaintiff to fall, mild leg pain, and leg weakness.  (AR 108.)  Dr. Bhatia noted plaintiff is obese with a

15   diabetes history and that a back CT scan report showed plaintiff "was almost normal."  (AR 108.)

16          Dr. Bhatia's neurological examination revealed 5/5 power in upper and lower extremities and

17   normal tone.  (AR 109.)  Dr. Bhatia assessed that plaintiff was developing diabetic peripheral

18   neuropathy, obesity, lumbar pain secondary to obesity, and right knee osteoarthritis.  (AR 109.)  Dr.

19   Bhatia noted: "I do not think there will be anything much I can do for him because more of the things

20   need to be prevented." (AR 109.) Dr. Bhatia recommended weight loss, referral to an orthopedist for

21   plaintiff's right knee, and potential need for diabetic medications to control plaintiff's diabetes.  (AR

22   109.) Dr. Bhatia started plaintiff on Topamax to help with diabetic neuropathy pain.  (AR 109.)

23                         ***Troy Smith, M.D., Consultative Orthopedic Surgeon***

24          Board-certified orthopedic surgeon Troy Smith, M.D. ("Dr. Smith"), conducted a December 31,

25   2002 orthopedic consultative examination.  (AR 131.)  Plaintiff complained of low back pain for five

26   years without leg radiation and right knee pain for three years from degenerative arthritis.  (AR 131.)

27   Plaintiff informed Dr. Smith that plaintiff wears a brace to stabilize the knee.  (AR 131.)  Dr. Smith

28   noted that plaintiff is unable to kneel, squat or climb stairs due to pain, has difficulty getting up and

                                                          4

1  down and uses neither a cane or crutch. (AR 131.) Dr. Smith found plaintiff "in no acute distress but

2  in obvious discomfort from his back." (AR 132.) Dr. Smith observed that plaintiff walked with a slight

3  right limp. (AR 132.)

4       Dr. Smith's examination revealed that plaintiff's cervical spine range of motion was within

5  normal limits and normal contour, curvature and alignment of plaintiff's cervical spine. (AR 132.) As

6  to plaintiff's lumbar spine, Dr. Smith noted marked tenderness to percussion but no sciatic notch

7  tenderness. (AR 132.) Dr. Smith's examination of plaintiff's upper and lower extremities revealed

8  range of motion within normal limits. (AR 133.) Dr. Smith found that plaintiff's right knee revealed

9  moderate effusion, tenderness along the medial and lateral joint line, crepitation on movement, and pain

10 with range of motion. (AR 133.) Dr. Smith concluded that the "knee is stable." (AR 133.) Dr. Smith

11 noted plaintiff's 5/5 hand grip strength bilaterally and neurological motor strength within normal limits

12 as to his shoulders, elbows, hips, knees and feet. (AR 134.)

13      Dr. Smith assessed right knee degenerative arthritis, symptomatic, lumbar disk derangement by

14 history, and exogenous obesity. (AR 134.) Dr. Smith concluded:

15     The patient cannot do repeated bending or lifting activities. The patient can lift 30
    pounds at most on an infrequent basis and nothing [on] a frequent basis. The patient can

16     sit, stand and walk three hours out of an eight hour day with normal breaks. The patient
    cannot kneel, squat or climb stairs. He does not need a cane in order to ambulate. His

17     ambulation is very limited at this time. (AR 135.)

18                  ***Non-Examining Physicians***

19      Carmen E. Lopez, M.D. ("Dr. Lopez"), a California Disability Determination Services ("DDS")

20 physician, completed a February 6, 2003 Physical Residual Functional Capacity Assessment to conclude

21 that plaintiff is able to: (1) lift/carry 30 pounds occasionally and 10 pounds frequently; (2) stand/walk

22 three hours during an eight-hour workday; (3) sit about six hours during an eight-hour workday; (4)

23 occasionally climb, balance, stoop, kneel, crouch and crawl. (AR 138, 139.) Dr. Lopez limited

24 plaintiff's pushing/pulling because of his right knee and low back pain. (AR 138.) Dr. Lopez imposed

25 neither manipulative, visual, communicative nor environmental limitations. (AR 140-141.) Murray

26 Mitts, M.D. ("Dr. Mitts"), a DDS physician, affirmed Dr. Lopez' assessment. (AR 137.)

27                     ***Medical Imaging***

28      An April 6, 2000 computed tomography of plaintiff's lumbar spine was negative. (AR 173.)

November 16, 2001 magnetic resonance imaging ("MRI") of plaintiff's lumbar spine revealed mild loss of height anteriorly at T12 and no abnormality.  (AR 171.)  January 28, 2003 x-rays of plaintiff's lumbar spine revealed no abnormality and a superior end plate compression of T-12 which is old.  (AR 136.)  Right knee x-rays of the same date revealed minimal degenerative changes, slight narrowing of the medial tibiofemoral compartment and narrowing of the patellofemoral joint space.  (AR 136.)

### *Medications*

Plaintiff's medications have included Ultram, Lipitor 20 and 40 mg, Lisinopril 20 mg, Topamax, Tramadol 50 mg, and Metformin.  (AR 78, 103, 105.)

## **Plaintiff's Activities And Testimony**

### *Reports And Questionnaires*

Plaintiff completed an August 27, 2002 Disability Report Adult to claim inability to work since June 1, 2001 due to back and leg problems, hypertension and diabetes.  (AR 74.)  Plaintiff had been a self-employed taxi driver from 1999 to June 1, 2001 but had a "loss in 2000 – worked less hours due to leg weakness."  (AR 74.)  Plaintiff stopped working because he experienced problems with driving and leg weakness and fell from losing balance.  (AR 74.)

Plaintiff completed a February 14, 2003 Reconsideration Disability Report to claim worsened conditions and leg swelling.  (AR 92.)  Plaintiff claimed inability to lift, increased difficulty to walk and to tie shoes, and ability to only shower, not bathe.  (AR 94.)

Plaintiff completed a February 22, 2003 Exertional Daily Activities Questionnaire to note that he lived in a one-bedroom house with his son, then age 6.  (AR 98.)  Plaintiff has difficulty to wash his feet and is unable to stand "very long."  (AR 98.)  Plaintiff experiences back and right leg pain when he stands too long.  (AR 98.)  Plaintiff requires 20 minutes to walk a block and needs to sit down after doing so to avoid falling down.  (AR 98.)  Plaintiff is able to climb two steps to enter his house but is otherwise unable to climb stairs.  (AR 99.)  Plaintiff is unable to lift or carry.  (AR 99.)  Plaintiff requires an entire day to clean one room.  (AR 99.)  Plaintiff is able no longer to mow his yard, keep it clean and work on cars.  (AR 100.)  Plaintiff elevates his legs because they swell.  (AR 100.)  Plaintiff needs a cane for his right leg.  (AR 100.)

In an undated statement, plaintiff noted that his legs do "not work right" and that his back hurts

6

1   "all the time."  (AR 101.)

2                     ***Plaintiff's December 22, 2003 ALJ Hearing Testimony***

3         Plaintiff testified at the December 22, 2003 ALJ hearing that he lives in a house with his son,

4   then age 7.  (AR 187-188.)  Plaintiff last worked driving a taxi "a little over" a year prior to the ALJ

5   hearing in 2001.  (AR 188.)  Plaintiff drove a taxi for a year and a half.  (AR 188.)  Plaintiff stopped

6   driving a taxi because "[m]y legs wouldn't cooperate with me.  I couldn't press the gas or brake and I

7   had three accidents.  I couldn't stop quick enough."  (AR 189.)

8         Plaintiff appeared at the hearing in a wheelchair "because it's hard to stand up.  I can stand up

9   for a few minutes and then I've got to sit down."  (AR 189.)  Plaintiff had used the wheelchair off and

10   on for nearly a year prior to the hearing.  (AR 189.)

11         Plaintiff identifies his problems as "[j]ust my back, and my legs, and stuff.  That's the only

12   thing."  (AR 192.)  For two years, plaintiff has had leg problems which have worsened.  (AR 189.)

13   Plaintiff has a back problem to cause his legs to give way.  (AR 189.)  Plaintiff experiences chronic back

14   pain.  (AR 189.)  Plaintiff's pain medication is Tramadol, which does not help.  (AR 189, 192.)  Plaintiff

15   takes 50 mg of Tramadol twice a day.  (AR 193.)  Plaintiff gets a pain medication shot when he sees his

16   doctor every two months.  (AR 190.)  The shots help for a day.  (AR 190.)  Plaintiff's doctors discussed

17   surgery two years prior to the hearing but "it's gone too far that they don't want to touch it."  (AR 190.)

18         Plaintiff does not drive, and plaintiff's neighbor drove plaintiff to the hearing.  (AR 190.)

19   Plaintiff is unable to perform housework, chores and his next door neighbor assists to clean and grocery

20   shop.  (AR 190.)

21         Plaintiff is able to sit up to an hour and a half after which plaintiff needs to lie down "because

22   my legs start swelling."  (AR 192, 196.)  Plaintiff is able to resume sitting after lying down for two or

23   three hours.  (AR 196.)  Plaintiff estimates that he is able to sit 2-2½ hours during eight hours.  (AR

24   196.)  Plaintiff is able to stand five to ten minutes.  (AR 192.)  Plaintiff estimates that he is able to lift

25   up to 20 pounds.  (AR 192.)  Using his wheelchair, plaintiff carries only two or three pounds.  (AR 195.)

26         Plaintiff's son assists plaintiff to put on socks and washes plaintiff's feet in the shower.  (AR

27   191.)  For a year and a half prior to the hearing, plaintiff has been unable to exercise because he is unable

28   to bend or otherwise move.  (AR 191, 193.)  Plaintiff had been able to walk vigorously.  (AR 193.)  In

1   March 2003, plaintiff was able to "walk a good block and have to sit down." (AR 194.) Plaintiff

2   experiences breathing difficulties. (AR 191.)

3       Plaintiff has no side effects from medication. (AR 191.) Plaintiff has no problems with his

4   hands and arms. (AR 192.) Plaintiff watches television eight to nine hours a day. (AR 190, 191.)

5       ***Vocational Expert Cheryl Chandler's December 22, 2003 ALJ Hearing Testimony***

6       Vocational expert Cheryl Chandler ("Ms. Chandler") testified at the December 22, 2003 ALJ

7   hearing that plaintiff's taxi driver work was semi-skilled, medium, that his security work was semi-

8   skilled, light, that his metal sorting work was unskilled, medium, and that his cashiering work was

9   unskilled, light. (AR 197.) As a first hypothetical, the ALJ asked plaintiff to assume a person who: (1)

10  is age 44; (2) has a GED certificate; (3) has past relevant work as Ms. Chandler attributed to plaintiff;

11  (4) has a combination of severe impairments; (5) retains the residual functional capacity to lift/carry 30

12  pounds occasionally and 10 pounds frequently; (6) is able to stand and walk three hours and to sit six

13  hours; (7) is able occasionally to climb, balance, stoop, kneel, crouch and crawl. (AR 197-198.) Ms.

14  Chandler testified that such person is unable to perform plaintiff's past work. (AR 198.) Ms. Chandler

15  testified that such person is able to perform jobs in the national economy and including cashier (15,000

16  jobs in California and 150,000 in the United States), telemarketing (3,000 jobs in California and 30,000

17  in the United States), and assembly work (11,000 in California and 110,000 in the United States). (AR

18  198.)

19      As a second hypothetical, the ALJ asked Ms. Chandler to assume a person who: (1) has the same

20  vocational parameters as the first hypothetical; (2) has a combination of severe impairments; (3) retains

21  the residual functional capacity to lift 20 pounds occasionally and to carry two or three pounds

22  frequently; and (4) is able to sit 2½ hours and to stand and walk five to ten minutes. (AR 199.) Ms.

23  Chandler testified that such person is unable to perform plaintiff's past work or jobs that exist in the

24  national economy. (AR 199.)

25      **The ALJ's Findings**

26      With his April 23, 2004 decision, the ALJ identified the specific issue as whether plaintiff is

27  under a disability, defined as inability to engage in substantial gainful activity due to a medically

28  determinable physical or mental impairment which is expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months. (AR 16.) As to plaintiff's insured status, the ALJ noted that plaintiff earned sufficient quarters of coverage to remained insured up to December 31, 2002, and thus, plaintiff must establish disability no later than that date. (AR 16.) In concluding plaintiff is not disabled and thus not entitled to disability insurance benefits or SSI, the ALJ found:

1.   Plaintiff has obesity, degenerative disc disease and degenerative right knee changes which are severe but do not meet or medically equal an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

2.   Plaintiff's allegations regarding his limitations are not credible.

3.   Plaintiff has the residual functional capacity to lift/carry 30 pounds occasionally and 10 pounds frequently, to stand and walk three hours, to sit six hours, and occasionally to climb, balance, stoop, kneel, crouch and crawl.

4.   Plaintiff is unable to perform his past relevant work.

5.   Plaintiff has no transferable skills from past relevant work and/or transferability of skills is not an issue.

6.   There are a significant number of jobs in the national economy which plaintiff is able to perform although plaintiff's non-exertional limitations preclude him to perform the full range of sedentary work and using section 201.28 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2. Such jobs include cashier (15,000 positions in California and 150,000 positions in the United States), telemarketer (3,000 positions in California and 30,000 positions in the United States), and assembler (11,000 positions in California and 110,000 in the United States). (AR 19-20.)

## DISCUSSION

### Standard Of Review

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by

9

substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9ᵗʰ Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9ᵗʰ Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[1]  Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9ᵗʰ Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9ᵗʰ Cir. 1987).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9ᵗʰ Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9ᵗʰ Cir. 1999).

This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9ᵗʰ Cir. 1988).  "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9ᵗʰ Cir. 2005).

Plaintiff bears the burden to prove that he is disabled which requires presentation of "complete and detailed objective medical reports of his condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9ᵗʰ Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)). "Failure to prove disability justifies a denial of benefits." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9ᵗʰ Cir. 2005); *see Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir.1995), *cert. denied*, 517 U.S. 1122, 116 S.Ct. 1356 (1996).  Plaintiff must furnish medical and other evidence about plaintiff's medical

---

[1]    "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9ᵗʰ Cir. 1997).

1  impairments. 20 C.F.R. §§ 404.1512(a), 416.912(a); ("[Y]ou must bring to our attention everything that

2  shows that you are blind or disabled."); 20 C.F.R. §§ 404.1514, 416.914 ("We need specific medical

3  evidence to determine whether you are disabled or blind.  You are responsible for providing that

4  evidence.")

5  _____Here, plaintiff claims disability since June 1, 2001 due to leg and back problems, hypertension

6  and diabetes.  (AR 16, 67, 74, 174.)

7  With the above standards in mind, this Court turns to plaintiff's criticism of the ALJ's March

8  23, 2004 decision.

9  **Review Of Evidence**

10  ***Hypertension And Diabetes***

11  Plaintiff argues that the ALJ "did not fully and fairly review the evidence."  More specifically,

12  plaintiff challenges the ALJ's assessment that plaintiff's diabetes mellitus "has been diet controlled" and

13  his hypertension "was stable."  (AR 17.)  The Commissioner responds that the ALJ properly found that

14  plaintiff's hypertension and diabetes mellitus were slight impairments which had minimal, if any, effect

15  on plaintiff's ability to work.

16  The SSA regulations provide: "If you do not have any impairment or combination of impairments

17  which significantly limits your physical or mental ability to do basic work activities, we will find that

18  you do not have a severe impairment and are, therefore, not disabled."  20 C.F.R. §§ 404.1520(c),

19  416.920(c). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," including

20  "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" as well as

21  "[u]nderstanding, carrying out, and remembering simple instructions."  20 C.F.R. §§ 404.1521(b)(1),

22  (3), 416.921(b)(1), (3).  At step two of the five-step disability evaluation, "the ALJ must consider the

23  combined effect of all of the claimant's impairments on her ability to function, and without regard to

24  whether each alone was sufficiently severe."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

25  Such inquiry "is a de minimis screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at

26  1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154, 107 S.Ct. 2287, 2297-2298 (1987)).

27  The purpose of the Listing of Impairments is to describe impairments "severe enough to prevent

28  a person from doing any gainful activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885 (quoting

Social Security Ruling ("SSR") 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983)).

If a claimant meets or equals a listed impairment, he/she is disabled. *Tackett*, 180 F.3d at 1099.

The United States Supreme Court has explained application of the Listing of Impairments:

> The listings . . . are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . . "The level of severity in any particular listing section is depicted by the *given set* of findings and not by the degree of severity of any single medical finding – no matter to what extent that finding may exceed the listed value."
>
> . . .
>
> The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity."

*Sullivan*, 493 U.S. at 530-531, (italics in original; citations omitted).

"While the Listing of Impairments does describe conditions that are generally considered severe enough to prevent a person from doing any gainful activity, an ALJ should not consider a claimant's 'impairment to be one listed in Appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the **findings** shown in the Listing of that impairment.'" *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990) (quoting 20 C.F.R. § 404.1525(d)); *Key v. Heckler*, 754 F.2d 1545, 1549-1550 (9th Cir. 1985)) (bold added).

Plaintiff bears the burden to prove that she has an impairment that meets or equals one of the listed impairments. *Tackett*, 180 F.3d at 1098. To "meet" a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his/her claim. *Tackett*, 180 F.3d at 1099. To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment. *Tackett*, 180 F.3d at 1099. Medical equivalence must be based on medical findings in the evidence supported by medically acceptable clinical and laboratory diagnostic techniques. *Tackett*, 180 F.3d at 1100; 20 C.F.R. §§ 404.1526(b) and 416.926(b).

As a matter of law, the ALJ need not "state why a claimant failed to satisfy every different

section of the listing of impairments," in particular when the ALJ's evaluation of the evidence is an adequate statement of the "foundations on which the ultimate factual conclusions are based." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683; *see Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

As noted by the Commissioner, Dr. Solis' and Sequoia Health Clinic records consistently noted plaintiff's diabetes mellitus was under "good control" based on plaintiff's maintenance of low-fat, low-cholesterol diet and physical activity, including walking. (AR 113-120, 157, 161, 162, 164, 165.) The records further indicate that plaintiff's hypertension was under "fair control" or "stable" with plaintiff's medication compliance. (AR 114-116, 120-122, 124, 125, 129, 130, 151, 157, 159, 161, 162, 164, 165.) Plaintiff points to no evidence of limitations attributable to hypertension or diabetes mellitus. Plaintiff appeared to attribute his alleged problems to his back and legs. (AR 192.) Plaintiff fails to demonstrate how plaintiff's hypertension or diabetes mellitus meets or equals an impairment in the Listing of Impairments. Plaintiff fails to establish error in the ALJ's evaluation of plaintiff's hypertension and diabetes mellitus.

### *Obesity*

Plaintiff faults the ALJ's evaluation of plaintiff's obesity. The Commissioner responds that the ALJ did not err as to plaintiff's obesity.

The ALJ included obesity as one of plaintiff's severe impairments. The ALJ noted that Dr. Smith diagnosed plaintiff's exogenous obesity. (AR 17, 134.) As noted by the Commissioner, the ALJ accepted Dr. Lopez and Dr. Mitts' assessment that plaintiff was limited to sedentary work. (AR 18.) Dr. Lopez specifically noted that plaintiff's "pain and limitation appear to be in large part due to his obesity." (AR 148.)

SSR 02-01p addresses evaluation of obesity and explains:

> Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. Obesity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus-even in children; gall bladder disease; hypertension; heart disease;

peripheral vascular disease; dyslipidemia (abnormal levels of fatty substances in the blood); stroke; osteoarthritis; and sleep apnea.

SSA considers obesity to determine whether a claimant has a medically determinable impairment, the impairment(s) is severe, the impairment meets or equals the requirements of an impairment in the Listing of Impairments, and the impairment(s) prevents the claimant from doing past relevant work and other work that exists in significant numbers in the national economy.  SSR 02-01p.  SSA will find obesity is a "severe" impairment when, along in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities.  SSR 02-01p.

SSA evaluates obesity to assess residual functional capacity:

> Obesity can cause limitation of function.  The functions likely to be limited depend on many factors, including where the excess weight is carried.  An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. . . .

> . . .

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.  Individuals with obesity may have problems with the ability to sustain function over time. . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.  This may be particularly true in cases involving sleep apnea.

> The combined effects of obesity with other impairments may be greater than might be expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

SSR 02-01p.

An ALJ has responsibility to determine the effect of a claimant's obesity on the claimant's other impairments, ability to work and general health, given the presence of the other impairments.  *See Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003).

"As obesity is not a separately listed impairment, a claimant will be deemed to meet the requirements if 'there is an impairment that, in combination with obesity, meets the requirements of a listing.'"  *Burch*, 400 F.3d at 682 (quoting SSR 02-01p.)  Although plaintiff argues that the ALJ erroneously failed to consider obesity to determine if plaintiff met or equaled sections 1.02, 1.04 or 9.08

14

of the Listings, plaintiff does not satisfy her burden to provide evidence to support the diagnosis and findings of an impairment in the Listing of Impairments. *See Burch*, 400 F.3d at 683 ("claimant carries the initial burden of proving a disability"); *see Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

"Equivalence may also be determined if a claimant has multiple impairments, including obesity, none of which meets the listing requirement, but which when viewed in the aggregate are equivalent to a listed impairment." *Burch*, 400 F.3d at 682. However, SSR 02-01p explains that an ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record." The ALJ was "not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683; *see Lewis*, 236 F.3d at 514 (ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment).

Here, plaintiff did not attempt to establish equivalence, and as such, the ALJ was precluded to engage in assumptions about the effects of plaintiff's obesity on other impairments. Plaintiff fails to demonstrate that her obesity and other impairments significantly limit her ability to perform basic work. Plaintiff establishes no error in the ALJ's treatment of her obesity, especially given plaintiff's related treatment limited to dietary counseling.

Moreover, the Commissioner correctly notes that the ALJ did not err to determine plaintiff's residual functional capacity and vocational ability. To evaluate obesity "to determine a claimant's [residual functional capacity], the ALJ's assessment 'must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.' As with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairments." *Burch*, 400 F.3d at 683 (quoting SSR 02-01p). In *Burch*, 400 F.3d at 683, the Ninth Circuit Court of Appeals pointed to SSR 96-8p:

> In assessing [residual functional capacity], the adjudicator must consider only limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit

1  an individual's ability to do basic work activities, it may – when considered with
2  limitations or restrictions due to other impairments – be critical to the outcome of a
   claim.

3      The ALJ pointed to plaintiff's 318-350 pounds weight range and advice to lose weight. (AR 17.)

4  Plaintiff received dietary counseling. (AR 115, 117, 119, 126-127.) Dr. Lopez noted that plaintiff's

5  "pain and limitation appear to be in large part due to his obesity," and the ALJ accepted Dr. Lopez'

6  assessment, which Dr. Mitts affirmed. (AR 18, 237, 148.) Based on his interpretation of the evidence,

7  the ALJ found that plaintiff is able to perform certain sedentary work. (AR 20.) Plaintiff points to no

8  error in the ALJ's evaluation of plaintiff's obesity in the ALJ's residual functional capacity assessment.

9  The record is devoid of evidence of functional limitations from obesity of which the ALJ did not

10  evaluate.

11                           ***Bronchitis And Thoracic Spine***

12      Plaintiff also takes issue with the ALJ's evaluation of plaintiff's bronchitis and thoracic spine

13  condition.  The Commissioner responds that plaintiff fails to establish ALJ error as to plaintiff's

14  bronchitis and thoracic spine condition.

15      The ALJ correctly noted that plaintiff "has been conservatively treated and medicated for low

16  back pain." (AR 17.)  The ALJ pointed to plaintiff's unremarkable medical imaging for his lumbar

17  spine. (AR 17, 136, 171, 173.)  As to plaintiff's lumbar spine range of motion, Dr. Smith noted marked

18  tenderness to percussion in the lumbar area and no sciatic notch tenderness. (AR 132.)  Plaintiff failed

19  to satisfy his burden to demonstrate a disabling thoracic spine impairment. *See Meanel v. Apfel*, 172

20  F.3d 1111, 1113 (9th Cir. 1999) (claimant "bears the burden" to prove disability and needs to present

21  "complete and detailed objective medical reports of her condition from licensed medical professionals").

22      Plaintiff's bronchitis treatment was, at most, fleeting.  Plaintiff points to no treatment of it and

23  in turn, no ALJ error as to plaintiff's bronchitis.

24                              ***Eight-Hour Workday***

25      Plaintiff argues that "the evidence does not support the ALJ's conclusion that Plaintiff could be

26  at work 8 hours per day."  The Commissioner responds that alleged inability to sustain an eight-hour

27  workday is corroborated only by Dr. Solis' properly rejected suggestion that plaintiff is limited during

28  an eight-hour work day of two hours each of sitting , standing, walking and lying/elevating. (AR 154.)

1      As discussed below, the ALJ properly rejected Dr. Solis' assessment upon which plaintiff relies.

2  The remaining evidence negates plaintiff's claim of inability to sustain an eight-hour workday.  Dr.

3  Smith found that plaintiff is able to "sit, stand and walk three hours out of an eight hour day with normal

4  breaks." (AR 135.)  Dr. Lopez and Dr. Mitts concluded that plaintiff is able to stand/walk three hours

5  and sit six hours during an eight-hour workday.  (AR 137.)  These doctors' opinions provide substantial

6  evidence to support the ALJ's consistent finding.  "The opinions of non-treating or non-examining

7  physicians may also serve as substantial evidence when the opinions are consistent with independent

8  clinical findings or other evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

9  2002.)  "To the extent that other physicians' conflicting opinions rested on independent, objective

10  findings, those opinions could constitute substantial evidence."  *Magallanes v. Bowen*, 881 F.2d 747,

11  753 (9th Cir. 1989).  Plaintiff fails to demonstrate error as the ALJ's finding that plaintiff is able to work

12  an eight-hour day.

13                               ***Dr. Solis' Opinion***

14      Plaintiff contends that the ALJ "failed to properly consider" Dr. Solis' opinion and provided no

15  "defensible basis" to reject Dr. Solis' opinion.  The Commissioner responds that the ALJ properly

16  rejected Dr. Solis' comments in her January 7, 2004 Complete Medical Report (Physical).  (AR 152.)

17      A treating physician's opinion is not conclusive as to a claimant's physical condition or the

18  ultimate issue of disability and may be disregarded by the ALJ even when it is not contradicted. *Matney*

19  *v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th

20  Cir. 1989); *Magallanes*, 881 F.2d at 751.[2]  An ALJ may reject a treating physician's opinion whether

21  or not it is contradicted, if the opinion is "brief and conclusory in form with little in the way of clinical

22  findings to support its conclusion."  *Magallanes,* 881 F.2d at 751.  Inconsistencies and ambiguities in

23  a treating physician's opinion regarding disability may constitute specific, legitimate reasons to reject

24  the opinion.  *Matney*, 981 F.2d at 1020.

25      The Ninth Circuit has further explained:

26

27      [2]     A treating physician's opinion is not conclusive as to claimant's disability as this ultimate issue is an

28  administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(e).  The Commissioner has final responsibility to determine a claimant's residual functional capacity.  20 C.F.R. § 404.1546.

1

2

> To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must "'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" . . . "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." . . . The rule . . . does not apply, however, "when the nontreating physician relies on independent clinical findings that differ from the findings of the treating physician." . . . "'[T]o the extent that [the nontreating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence . . .'"

3

4

5

6

*Magallanes*, 881 F.2d at 751(citations omitted.)

7

An ALJ may reject a treating physician's report based on a claimant's exaggerated claims. *See,*

8

*e.g., Sandgathe*, 108 F.3d at 980. A physician's opinion of disability "premised to a large extent upon

9

claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints

10

have been "properly discounted." *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (citing *Brawner v.*

11

*Sec. of Health & Human Servs.*, 839 F.2d 432, 433-434 (9th Cir. 1988)); *see Saelee v. Chater*, 94 F.3d

12

520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113, 117 S.Ct. 953 (1997) ("no physician has been able

13

to find a link between [claimant's] complaints and known medical pathologies").

14

"[T]he ALJ is responsible for determining credibility, resolving conflicts in the medical

15

testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

16

Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

17

specific, legitimate reasons to reject the opinion. *Matney*, 981 F.2d at 1020.

18

As a reminder, Dr. Solis concluded in part that plaintiff is able to: (1) lift up to 20 pounds

19

frequently and up to 50 pounds occasionally; (2) carry up to 10 pounds frequently and up to 20 pounds

20

occasionally; and (3) sit, stand/walk and lie/elevate up to two hours in an eight-hour workday and up to

21

one hour without interruption. (AR 153-155.) Dr. Solis restricted plaintiff to climb, crouch, kneel and

22

crawl due to plaintiff's right knee problems, morbid obesity and pain. (AR 155.)

23

After detailing the medical record, the ALJ properly rejected Dr. Solis' unsubstantiated

24

assessment:

25

26

27

28

> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor until after the hearing when Dr. Solis submitted a medical assessment dated January 7, 2004 (Exhibit 6F). . . . The Administrative Law Judge asked Dr. Solis to clarify some points by letter dated January 21, 2004 (Exhibit 9E, p. 1). Dr. Solis responded that a response was beyond her area of expertise (Exhibit 6B).

18

1  The Administrative Law Judge rejects the conclusions reached by Dr. Solis because she
2  failed to show what objective signs or symptoms were used to reach the residual
   functional capacity, and is not consistent with her treating notes.  (AR 18.)

3       The Commissioner correctly notes that Dr. Solis, with her January 7, 2004 Complete Medical

4  Report (Physical) failed to adequately describe objective signs or symptoms to substantiate her

5  conclusion.  Such failure triggered the ALJ's January 21, 2004 letter to request Dr. Solis' bases for her

6  assessment and other supporting information.  Dr. Solis responded: "I am unable to forward the

7  information you have requested **as I feel that this assessment is beyond my level of expertise**."  (Bold

8  added.)  "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and

9  inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

10  (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001)).  Dr. Solis' opinion was inadequately

11  supported to warrant its rejection.

12       The ALJ was entitled to reject Dr. Solis' assessment in that it is "brief and conclusory in form

13  with little in the way of clinical findings to support its conclusion."  *Magallanes*, 881 F.2d at 751.  Dr.

14  Solis' cryptic form responses are not entitled to deference.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.

15  1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized

16  medical opinions over check off forms); *see Batson v. Commissioner*, 359 F. 3d 1190, 1195 (9th Cir.

17  2003) (ALJ properly discounted a physician's checklist form which lacked supportive evidence, was

18  contradicted by other statements and assessments of claimant's condition, and was based on claimant's

19  subjective descriptions).  To compound the problem for plaintiff, Dr. Solis' response to the ALJ instills

20  little confidence that she is qualified to render opinions upon which plaintiff relies.  Dr. Solis avoided

21  a meaningful response to the ALJ's request for further information to support her sweeping conclusions

22  **Plaintiff's Credibility**

23       Plaintiff contends that the "ALJ failed to give adequate reasons for rejecting credibility."  The

24  Commissioner responds that the "ALJ's credibility determination was sufficiently specific to permit the

25  court to conclude that the ALJ did not arbitrarily discredit [plaintiff's] testimony."

26       "Credibility determinations are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th

27  Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).  "An ALJ cannot be required to believe

28  every allegation of disabling pain."  *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-

1  serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir.

2  1995).

3       A claimant bears an initial burden to "produce objective medical evidence of underlying

4  'impairment,' and must show that the impairment, or a combination of impairments, 'could reasonably

5  be expected to produce pain or other symptoms.'" *Baston*, 359 F.3d at 1196 (quoting *Smolen*, 80 F.3d

6  at 1281)).  If a claimant satisfies such initial burden and "if the ALJ's credibility analysis of the

7  claimant's testimony shows no malingering, then the ALJ may reject the claimant's testimony about

8  severity of symptoms with 'specific findings stating clear and convincing reasons for doing so.'" *Baston*,

9  359 F.3d at 1196 (quoting *Smolen*, 80 F.3d at 1284).  "If the ALJ finds that the claimant's testimony as

10  to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

11  with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

12  discredit claimant's testimony."  *Thomas*, 278 F.3d at 958.

13       If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing

14  court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.  A reviewing court will not reverse

15  an ALJ's credibility determinations "based on contradictory or ambiguous evidence." *Johnson*, 60 F.3d

16  at 1434 (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).  "So long as the adjudicator makes

17  specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations

18  based on inconsistencies in the testimony or on relevant character evidence."  *Bunnell v. Sullivan*, 947

19  F.2d 341, 346 (9th Cir. 1991).  Moreover, "the ALJ is entitled to draw inferences 'logically flowing from

20  the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (quoting *Sample v. Schweiker*, 694

21  F.2d 639, 642 (9th Cir. 1982)).

22       In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

23       In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,
     inconsistencies either in his testimony or between his testimony and his conduct, his

24       daily activities, his work record, and testimony from physicians and third parties
     concerning the nature, severity, and effect of the symptoms of which he complains.

25       *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting
     *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c).  An

26       ALJ's finding that a claimant generally lacked credibility is permissible basis to reject
     excess pain testimony.

27

28  / / /

1    *See also* SSR 96-7p.[3]

2        An ALJ may consider the following factors to determine the credibility of a claimant's

3    allegations of disabling pain:

4        1.    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

5        2.    Precipitating and aggravating factors (e.g., movement, activity, environmental

6              conditions);

7        3.    Type, dosage, effectiveness, and adverse side-effects of pain medication;

8        4.    Treatment, other than medication, for pain relief;

9        5.    Functional restrictions;

10       6.    Claimant's daily activities;

11       7.    Unexplained, or inadequately explained, failure to seek treatment or to follow up a

12             prescribed course of treatment; and

13       8.    Ordinary techniques to test a claimant's credibility.

14   *Bunnell*, 947 F.2d at 346; *see* 20 C.F.R. §§ 404.1529, 416.929.

15       The ALJ thoroughly addressed plaintiff's credibility:

16       Overall, the nature, location, onset, duration, frequency, radiation and intensity of the
         claimant's alleged impairments are not corroborated by the record to the degree alleged.
17       There is no doubt that the claimant has experienced some pain, but certainly not to the
         degree alleged.  The claimant has not received treatment consistent with a chronic pain
18       syndrome such as biofeedback, acupuncture, or attendance at a pain management clinic.
         The claimant told Dr. Smith that he had postponed back surgery because he had no one
19       to take care of his child.  He reported he also needed surgery on his right knee but it had
         not been performed because his general condition would not permit doing the surgery
20       (Exhibit 3F, p. 1).  The claimant presented at the hearing in a wheelchair and testified
         that he has been using it on and off for almost [a] year.  However, there is no mention in
21       the treating records that a wheelchair had been prescribed or was the claimant observed
         to be in a wheelchair at any of the appointments.  In December 2002, the claimant told
22       Dr. Smith that he did not use a cane or crutch (Exhibit 3F, p. 1).  There is mention of a
         recommended TENS unit in March 2002, but in June 2003, the claimant apparently still
23       had not received it (Exhibits 2 F, p. 10; 6F, pp. 9, 14).  In October 2003, the claimant
         complained about increased back pain due to taking his child to the fair (Exhibit 6F, p.

24

---

25       [3]      SSR 96-7p sets out factors to assess a claimant's credibility: (1) claimant's daily activities; (2) location,
         duration, frequency, and intensity of claimant's pain or other symptoms; (3) factors that precipitate and aggravate the
26       symptoms; (4) type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate pain
         or other symptoms; (5) treatment, other than medication, claimant receives or has received for relief of pain or other
27       symptoms; (6) measures other than treatment claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on
         his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the
28       claimant's functional limitations and restrictions due to pain or other symptoms.

8).  The claimant has been encouraged to lose weight and exercise (Exhibit 2F, pp. 5, 7, 8).

The claimant testified he has chronic back pain all the time with no relief from his medications and no side effects.  He stated that problems with his back have caused his legs to give out.  The claimant testified that a neighbor does his housework and grocery shopping.  The claimant stated he cooks, watches television, and lies on the couch for eight to nine hours a day.  The claimant testified he last worked one year ago driving a taxi for 1-1/2 years . . . (Exhibit 3F, p. 2).  (AR 17-18.)

The ALJ properly discounted plaintiff's alleged limitations in that they were, to a degree, inconsistent with plaintiff's treatment.  Plaintiff received conservative treatment for his low back and right knee.  According to the medical record, plaintiff received neither biofeedback, acupuncture or aggressive pain management treatment.  Plaintiff's pain was generally managed with medication.  (AR 151, 189, 192.)  *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered treating physician's failure to prescribe and claimant's failure to request "any serious medical treatment for this supposedly excruciating pain.");  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("conservative treatment" suggests "a lower level of both pain and functional limitation.");  *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) ("unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is relevant to assess credibility);  *see also Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ entitled to draw inference from general lack of care).

Other evidence diminishes plaintiff's credibility.  Plaintiff appeared at the hearing in a wheelchair and testified that he had used a wheelchair off and on for nearly a year prior to the ALJ hearing.  (AR 189.)  The ALJ properly noticed the absence of a wheelchair prescription or plaintiff's appearance in a wheelchair at appointments.  (AR 18.)  Plaintiff was a bit inconsistent as to when he stopped working as a taxi driver.  In an August 27, 2002 Disability Report Adult, plaintiff noted June 1, 2001 as the end of his taxi driving.  (AR 74.)  At the December 22, 2003 ALJ hearing, he claimed he stopped taxi driving "a little over" a year prior to the hearing.  (AR 188.)  In a February 22, 2003 Exertional Daily Activities Questionnaire, plaintiff claimed inability to lift or carry.  (AR 99.)  Plaintiff testified at the ALJ hearing that he is able to lift up to 20 pounds.  (AR 192.)

In addition, Dr. Smith noted his observation that plaintiff wore a brace to stabilize his knee but did not use a cane or crutch.  (AR 131.)  In his February 22, 2003 Exertional Daily Activities

1   Questionnaire, plaintiff noted he needs a cane for his right leg. (AR 100.) On April 30, 2001, Dr. Solis

2   noted that plaintiff had a neurosurgery appointment but "messed up" and was never seen. (AR 172.)

3   On June 4, 2003, Dr. Solis noted that plaintiff's back pain was "somewhat better" and that plaintiff "tries

4   to stay active." (AR 162.) Plaintiff admitted to no side effects from medication. (AR 191.)

5         The ALJ provided specific, clear and convincing reasons to support his finding that plaintiff's

6   allegations as to his limitations are not credible. (AR 20.) *See Verduzco v. Apfel*, 188 F.3d 1087, 1090

7   (9th Cir. 1999) ("The ALJ pointed out several areas in which the appellant's testimony or behavior was

8   inconsistent with his own statements or actions, as well as with the medical evidence.") Plaintiff

9   overstated his alleged limitations. Based on the substantial evidence to support the ALJ's credibility

10  determination, this Court is in no position to second guess the ALJ.

11  **CONCLUSION AND RECOMMENDATIONS**

12        For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

13  properly concluded plaintiff is not disabled. This Court further finds that the ALJ's decision is supported

14  by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this

15  Court RECOMMENDS to:

16       1.    DENY plaintiff's request to reverse the Commissioner's decision to deny plaintiff

17           disability insurance benefits and SSI or to remand for further proceedings; and

18       2.    DIRECT this Court's clerk to enter judgment in favor of defendant Jo Anne B. Barnhart,

19           Commissioner of Social Security, and against plaintiff Clifford Collins and to close this

20           action.

21        These findings and recommendations are submitted to the district judge assigned to this action,

22  pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. No later than August 16,

23  2006, any party may file written objections to these findings and recommendations with the Court and

24  serve a copy on all parties and the magistrate judge and otherwise in compliance with this Court's Local

25  Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and

26  Recommendations." Responses to objections shall be filed and served no later than August 25, 2006

27  and otherwise in compliance with this Court's Local Rule 72-304(d). A copy of the responses shall be

28  served on the magistrate judge. The district judge will review the magistrate judge's findings and

1   recommendations, pursuant to 28 U.S.C. § 636(b)(1)(c).  The parties are advised that failure to file

2   objections within the specified time may waive the right to appeal the district judge's order. *Martinez*

3   *v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

4          IT IS SO ORDERED.

5   **Dated:    August 3, 2006**                          **/s/ Lawrence J. O'Neill**
    66h44d                                          UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28